IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs, November 14, 2011

## IN RE:  DANNYE J.C.

**Appeal from the Circuit Court for Knox County**
**No. F-10-118734    Hon. Bill Swann, Judge**

**No. E2011-01066-COA-R3-JV-FILED-JANUARY 12, 2012**

At a proceeding in Juvenile Court, appellant was found guilty of severe child abuse, which she appealed to the Circuit Court.  On motion of the Department of Human Services, the Trial Court dismissed the appeal without a trial.  On appeal, we reverse the Trial Court on the grounds that Tenn. Code Ann. § 37-1-159 requires the Trial Judge to conduct a *de novo* trial on the appeal from Juvenile Court.

**Tenn.  R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Reversed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which  CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

L. Rosillo Mulligan, Harriman,  Tennessee, for the appellant, Reyna J.

Robert E. Cooper, Jr., Attorney General and Reporter, William E. Young, Solicitor General, and Alexander S. Rieger, Assistant Attorney General, Nashville, Tennessee, for the appellee, State of Tennessee, Department of Children's Services.

## OPINION

Appellant, Reyna J. ("mother"), was found by the Juvenile Court to have committed severe child abuse against her son, DJC, d.o.b. 1/18/09, in a dependency/neglect proceeding. She then appealed that decision to the Fourth Circuit Court, and a *de novo* trial was then set for April 26, 2011.  The mother filed a Motion to Expedite the "*De Novo*" Trial, explaining

the child was born severely premature, with very serious medical problems, and that the child, who at the time was 2 ½ years old, was not expected to live beyond 2-3 more years. The mother asked the Court to expedite the hearing so that she could regain custody of the child and spend as much time with him as she could. She stated that she was confident that the child abuse finding would be reversed after a *de novo* hearing, because the finding was based on circumstantial evidence, and because the child was in the hospital when the alleged abuse occurred.

The parties were then ordered to attend mediation before trial.

The mother then filed a Motion for Authorization to Transcribe Defense Witnesses' Trial Testimony, stating that, since the mother was indigent, she was requesting authorization from the Court to have this testimony from the Juvenile Court hearing transcribed, and the motion was granted by the Trial Court.

On April 7, 2011, the Department of Children's Services ("DCS") filed a Motion to Dismiss Appeal or in the Alternative to Continue Trial. DCS stated the mother had been arrested for failure to pay child support, and that after her arrest, it was discovered that she had prior involvement with ICE, and was in the process of being deported back to Honduras. DCS averred the mother lacked the ability to legally return to the United States during the child's lifespan, and thus could not take care of the child. DCS stated that the father was also in the US illegally and could be deported at any time. Further, that the father was not a party to the appeal and had never proven that he could take care of the child, who is medically fragile. Further DCS stated that the child's medical needs could not be met in Honduras.

The mother's attorney then filed a Motion to Excuse Respondent from Mediation and Other Court Proceedings, stating that she was arrested on February 15, 2011, for failure to pay child support, and that the father paid her purge amount of $365.00, but the Knox County Detention Center would not release her, stating that she was on "ICE hold".

The mother's attorney stated that ICE picked mother up and moved her to Louisiana, and she was scheduled to be deported on April 8, 2011. The mother's attorney stated that the mother's family did not have the money to hire an immigration lawyer to resist the mother's deportation. The mother's attorney argued that the mother still had constitutional rights to the care and custody of her child, and that she had not waived the same by being involuntarily deported. The mother's attorney further argued that the mother also had the right, if she were to regain custody, to take her child with her if she was deported. The attorney further suggested the father could participate and act on the mother's behalf, since he was in constant communication with her.

The Circuit Court then entered an Order Dismissing the Appeal, stating the Court had considered the fact that there was a five day trial in Juvenile Court and a 45 page Order produced by the Magistrate, and that since the case turned on the mother's credibility, who denied child abuse but could not appear for trial, then the appeal could not be prosecuted. Thus, the Court dismissed the appeal.

The Trial Court denied further requests made by the mother's attorney, stating the Judge did not need the transcript to rule on the appeal, and that our Court did not need it to pass on the propriety of dismissing the appeal. The Court stated that since the mother did not testify in Juvenile Court, this further diminished the value of the transcript, and noted "at some point common sense must rear its ugly head".

The mother filed a Notice of Appeal, along with a purported Statement of the Evidence, stating that at the hearing, DCS argued the mother was a necessary party, and that the child's medical needs could not be met in Honduras, with which the Guardian Ad Litem agreed. The mother has appealed and raises the issues of whether the Trial Court erred in dismissing the mother's appeal before holding a trial *de novo*, and whether the Trial Court erred in refusing to authorize transcription of the hearing before the Juvenile Court.

The mother insists that the Trial Court erred in dismissing her appeal before she was given the opportunity to have her case heard in a *de novo* trial, as contemplated by the statute. DCS now concedes in its brief that the Trial Court erred in dismissing the mother's appeal before hearing. The statute provides:

> The juvenile court shall be a court of record; and any appeal from any final order or judgment in a delinquency proceeding, filed under this chapter, except a proceeding pursuant to § 37-1-134, may be made to the criminal court or court having criminal jurisdiction that shall hear the testimony of witnesses and try the case *de novo*; and any appeal from any final order or judgment in an unruly child proceeding or dependent and neglect proceeding, filed under this chapter, may be made to the circuit court that shall hear the testimony of witnesses and try the case *de novo*.

Tenn. Code Ann. § 37-1-159.

The statute requires the Circuit Court to "hear the testimony of witnesses and try the case *de novo*" when a timely appeal from a dependency/neglect proceeding is made. The *de novo* reviewing court is not bound by the record below nor by findings or conclusions of the Magistrate, but must conduct a "new trial on the entire case - that is, on both questions of fact and issues of law - conducted as if there had been no trial in the first instance." *Kissick v. Kallaher*, 2006 WL 1350999 (Tenn. Ct. App. May 18, 2006).

In this case, the Trial Judge improperly dismissed the mother's appeal from Juvenile Court. There was no evidentiary basis to dismiss this appeal. The Trial Court did hold that the case "turns on the credibility of mother", however, the mother did not testify at the Juvenile Court hearing, and this observation holds no basis to dismiss the case without a hearing.

DCS concedes, a biological mother has a constitutional right to the care, custody and control of her child. *See, e.g.*, *Blair v. Badenhope*, 77 S.W.3d 137 (Tenn. 2002)(parent has fundamental right to care and custody of child which continues without interruption as long as the parent has not relinquished it, abandoned it, or engaged in conduct requiring its limitation or termination); *Plyler v. Doe*, 457 U.S. 202, 102 S.Ct. 2382 (1982)(illegal immigrant is "person" contemplated by Fifth and Fourteenth Amendments and has right to due process and equal protection of the law). The record does not establish whether the mother has been deported, or whether she is in the custody of the government. In any event, she has the statutory right to a *de novo* hearing in the dependency/neglect proceedings concerning her child, to determine whether the finding of severe child abuse was supported by clear and convincing evidence. *See Harris v. DCS*, 2011 WL 3890341 (Tenn. Ct. App. Sept. 6, 2011). If the Juvenile Court decision is reversed, she would be entitled to the custody of her child, and could elect to take the child with her if she were deported to Honduras. *See Newton v. INS*, 736 F.2d 336 (6th Cir. 1984).

The mother further argues that the Trial Court erred in refusing to authorize transcription of the entire Juvenile Court trial after it dismissed the mother's appeal. We are holding, the dismissal of the appeal was improper, and remanding to the Trial Court to comply with the statute and further consider this issue.

The Judgment of the Trial Court is reversed, and the case remanded to the Trial Court for further proceedings. The cost of the appeal is assessed to the Department of Children's Services.

_____
HERSCHEL PICKENS FRANKS, P.J.

-4-